# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KIMBERLY KOTARA, <br><br> Claimant, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Respondent. | No. 17 C 4278 <br><br> Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Claimant Kimberly Kotara ("Claimant) seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 12.] The parties have filed cross-motions for summary judgment [ECF Nos. 8 and 15] pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 8] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 15] is denied. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

Claimant filed her claim for DIB on September 24, 2013, alleging disability beginning July 21, 2012. (R. 20.) The application was denied initially and upon reconsideration, after which Claimant requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*)

On February 5, 2016, Claimant, represented by counsel, appeared and testified at a hearing before ALJ Lee Lewin. (R. 37–77.) The ALJ also heard testimony at the hearing from medical expert ("ME") Sai R. Nimmagadda, M.D.[1] and vocational expert ("VE") Susan Entenberg. (R. 20, 59–76.)

On March 24, 2016, the ALJ issued an unfavorable decision denying Claimant's claim for DIB. (R. 17–36.) The opinion followed the five-step evaluation process required by Social Security regulations. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since her alleged disability onset date of July 21, 2012. (R. 22.) At step two, the ALJ found that Claimant had the following severe impairments: left shoulder arthroplasty with revision, cervical spine facet arthropathy, and headaches. (*Id.*) The ALJ also found that Claimant's left cubital tunnel condition was a non-severe impairment. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ then determined that Claimant had the residual functional capacity ("RFC")[2] to:

> perform light work . . . except she can occasionally lift/carry five pounds and frequently lift/carry less than five pounds with the left upper extremity. She can occasionally lift/carry 20 pounds, and frequently lift/carry 10 pounds with the right upper extremity. Stand/walk 6 hours and sit 6 hours in an 8-hour workday. No push/pull with the left upper extremity, push/pull with the right upper extremity is limited to lift and carry weights. Occasionally climb ramps and stairs, never ladders, ropes or scaffolds; balance, stoop, kneel and crouch frequently, never crawl. Occasionally reach in all directions to shoulder height and no overhead reaching with the left upper extremity, unlimited reaching on the right. Handling, fingering and feeling are limited to frequent with the left upper extremity. Avoid

---

[1] The parties and the February 5, 2016 hearing transcript refer to the ME as Dr. Syard Yamagata. However, the ME's *curriculum vitae* establishes that his name is Dr. Sai R. Nimmagadda. (R. 672.)

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

vibration, concentrated exposure to hazards including dangerous moving machinery and unprotected heights, and commercial driving[.]

(R. 24.) Based on this RFC, the ALJ found at step four that Claimant was unable to perform any past relevant work. (R. 31.) Finally, at step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Claimant can perform, such as order clerk, telemarketer, and cashier. (R. 31–32.) Because of this determination at step five, the ALJ found that Claimant was not disabled under the Act. (R. 32.) The Appeals Council declined to review the matter on April 19, 2017, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal

quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

Claimant alleges numerous errors on appeal. Claimant contends that the ALJ (1) ignored regulatory requirements in assessing the opinion evidence; (2) failed to incorporate Claimant's limitations in concentration and sustaining attention into his RFC assessment; (3) improperly assessed her credibility; and (4) erred in accepting and relying upon the VE's testimony regarding the number of available jobs. [ECF No. 9, at 8–12.]

**A.    The Treating Physician's Opinion**

The Court first addresses Claimant's argument that the ALJ failed to give appropriate weight to the opinion of her treating physician, Dr. Ira Goodman. [ECF No. 9, at 11.] An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record.[3] 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial

---

[3] Last year, the Social Security Administration ("SSA") adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. *See id.*

4

evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003).

"Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion." *Campbell*, 627 F.3d at 308. To do this, the ALJ must, by regulation, consider a variety of factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) whether the physician was a specialist in the relevant area; and (6) other factors that validate or contradict the opinion. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); 20 C.F.R. § 404.1527(c)(2)–(6).

Dr. Goodman, a pain management specialist, treated Claimant for her chronic pain from February 2012 through January 2016. (*See* R. 472–541, 571–94, 682–778, 795–803.) On November 6, 2015, Dr. Goodman completed a Pain Report. (R. 668–71.) Dr. Goodman opined that Claimant's chronic and acute pain markedly impacted her ability to sustain concentration and attention, which resulted in frequent failure to complete tasks. (R. 668–69.) Dr. Goodman further opined that Claimant was unable to function in a competitive work setting and that Claimant's pain was likely to increase if she returned to work. (R. 669.)

The ALJ afforded Dr. Goodman's assessed limitations "some weight," but, notably, did not incorporate any concentration or attention restrictions into his RFC assessment. (R. 24, 30.) At the same time, the ALJ gave "great weight" to the assessment of Dr. Nimmagadda, the ME who testified, and the ALJ ultimately adopted Dr. Nimmagadda's proposed RFC assessment. (R. 24, 29–30, 63–68.) The Court finds that remand is necessary because the ALJ improperly discounted Dr. Goodman's opinion and failed to adequately evaluate the weight to be given to his opinion.

To begin, the reasons given by the ALJ for discounting Dr. Goodman's opinion are not "good reasons" supported by substantial evidence. *See Campbell*, 627 F.3d at 306; *Gudgel,* 345 F.3d at 470. First, the ALJ asserted that Dr. Goodman's "notes are repetitive without definitive clinical assessment of the claimant's limitations." (R. 30.) But the ALJ failed to explain what constituted a "definitive clinical assessment" or why such an assessment should have been found in Dr. Goodman's notes. Nor did the ALJ explain which aspects of Dr. Goodman's notes were "repetitive" or why they weighed against crediting Dr. Goodman's opinion. To the contrary, the purported repetitiveness of Dr. Goodman's treatment notes, which span well over a hundred pages and address almost four years of treatment, would seemingly indicate consistency in his diagnoses and his treatment. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Second, the ALJ pointed out that Dr. Goodman continuously described Claimant "as alert and not drowsy," even though "she sleeps five hours." (R. 30); *see also* (R. 28) (commenting on Dr. Goodman's "numerous notations" of Claimant's non-drowsiness.) But it is unclear how this description has any bearing on the weight to give to Dr. Goodman's opinion. For one thing, it does not show inconsistency in Dr. Goodman's treatment notes: someone can exhibit alertness and non-drowsiness during a medical examination even though she only slept for five hours the previous night. What is more, an individual may be alert yet still be in so much pain that she has trouble concentrating or paying attention, as Dr. Goodman opined with respect to Claimant. (*See* R. 669.)

Third, the ALJ apparently discounted Claimant's self-reported "8 out of 10" pain rating based on the absence of any "indication she required more than palliative treatment with medication and therapy." (R. 30.) The ALJ, however, failed to explain why Claimant's perceived

6

palliative medication and therapy was inconsistent with her claimed level of pain. For example, as it pertains to her medication, Claimant was prescribed hydrocodone-acetaminophen (Norco) for her "breakthrough pain"[4] and extended-release morphine sulfate (MS Contin) for her chronic pain at the time of her alleged disability onset in July 2012. (R. 496–500) (June 8, 2012 and Aug. 10, 2012 office visit records.) Over three years later, and just before Dr. Goodman offered his Pain Report, Claimant was still taking MS Contin every eight hours for her chronic pain. (R. 682–85) (Oct. 16, 2015 office visit record).) Instead of Norco, she was now taking immediate-release (IR) morphine sulfate "around the clock" to treat her breakthrough pain. (R. 683.) Notably, Dr. Goodman increased Claimant's allowed dosage of IR morphine sulfate from eight 15 mg tabs per day to ten tabs per day. (R. 683–84.) The Court simply does not see how such a medication regimen, which required daily (and multiple) doses of strong narcotic pain medications[5] over a number of years, would somehow indicate that Claimant was exaggerating her pain. *See, e.g.*, *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (finding that physicians' prescription of strong pain medications, such as morphine, substantiated claimant's pain allegations).

And contrary to the ALJ's assertion, the record does in fact reflect that Claimant required or considered treatment other than medication or therapy. The ALJ himself recognized that Claimant "underwent several treatment modalities for pain." (R. 26.) By the time Claimant first saw Dr. Goodman in February 2012, she had undergone eleven shoulder surgeries. (R. 504.) Over

---

[4] Breakthrough pain, also known as a flare-up or flare, occurs when a person already on pain medication to manage chronic pain experiences a sudden, intense spike of pain. Breakthrough pain: Causes and medications, https://www.medicalnewstoday.com/articles/319604.php (last visited Aug. 6, 2018).

[5] Norco and morphine sulfate are both opioid (narcotic) medications that are only intended to address significant pain. *See* https://www.webmd.com/drugs/2/drug-63/norco-oral/details (Norco "contains an opioid (narcotic) pain reliever" and "is used to relieve moderate to severe pain"); http://app.purduepharma.com/xmlpublishing/pi.aspx?id=ms ("MS CONTIN is an opioid agonist indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.") (both websites last visited Aug. 6, 2018).

7

the next couple of months (and shortly before her alleged disability onset date), Claimant received a cervical facet joint injection and cervical medial branch and occipital nerve blocks, and she underwent cervical medial branch radiofrequency lesioning. (R. 26, 521–22, 528–29, 535–36.) In October 2013, Claimant again had surgery, undergoing a revision of her total left shoulder arthroplasty with the removal of orthopedic implants. (R. 27, 392–93, 450–51, 472.) Claimant also considered having a spinal cord stimulator ("SCS") implanted. (R. 27, 60–63, 321, 481–82, 669, 698.) That Claimant would try (or consider trying) these various intrusive procedures is indicative of the severity of her pain. *See* Social Security Ruling ("SSR")[6] 96-7p,[7] at *7 (explaining that persistent attempts to obtain pain relief by, for example, trying "a variety of treatment modalities," generally support "allegations of intense and persistent symptoms"); *see also Carradine*, 360 F.3d at 755 (claimant's resort to a spinal catheter and spinal-cord stimulator supported her pain allegations). Thus, in ignoring this evidence, the ALJ improperly discounted Claimant's pain and Dr. Goodman's opinion regarding Claimant's pain. *See Kaminski v. Berryhill*,

---

[6] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (internal citation and quotations omitted); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (emphasis omitted).

[7] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (Mar. 16, 2016). Although the ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," it does not alter their duty "to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). The SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before March 28, 2016. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, 2017 WL 4790249, at n.27 (Oct. 25, 2017). The ALJ issued his opinion on March 24, 2016 (R. 32), making SSR 96-7p the applicable ruling for the Court's review. Nonetheless, on remand, the ALJ should apply SSR 16-3p. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, at n.27.

894 F.3d 870, 874–75 (7th Cir. 2018) (an ALJ may not discount a treating physician's opinion by misinterpreting or cherry-picking evidence).

Lastly, the ALJ took issue with Dr. Goodman's failure to document the degree of limitation assessed when examining Claimant's range of motion. (R. 30.) It is true that Dr. Goodman generally did not note, in degrees, the precise limits of Claimant's neck and shoulder range of motion.[8] (*See, e.g.*, R. 582 (Feb. 4, 2014 record noting "[l]imited left rotation and tender left facets" in the neck); R. 705 (Mar. 27, 2015 record noting "[v]ery limited ROM in the left shoulder with marked diffuse tenderness").) But the Court cannot discern the ALJ's logic in using this fact to discount Dr. Goodman's November 2015 Pain Report. *See Noble v. Colvin*, 942 F. Supp. 2d 799, 808, 812 (N.D. Ill. 2013) (in discounting a treating physician's opinion, the ALJ must "build the requisite logical bridge" between the evidence and his conclusion). It is unclear why Dr. Goodman's failure to note whether Claimant could move her shoulder or neck a certain number of degrees undercuts his opinion about how Claimant's chronic and acute pain impacts, for example, her ability to concentrate and pay attention or to work eight hours per day, five days per week. (*See* R. 669.) And the ALJ did not provide any explanation as to why this was the case. (R. 30.)

Further, even if the ALJ provided "good reasons" for discounting Dr. Goodman's opinion, he was still required to address the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to give the opinions. *See Scrogham*, 765 F.3d at 697–98 & n.48 (explaining that the ALJ should have addressed the factors set forth in § 404.1527(c) and indicating that her failure to do so was not harmless); SSR 96-2p,[9] at *4 ("Treating source medical opinions are still entitled to

---

[8] In initially assessing Claimant, Dr. Goodman did note that she could not abduct her left shoulder more than 80 degrees. (R. 506.)
[9] Although the SSA has rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, that rescission is effective only for claims filed as of March 17, 2017. *See* Notice of Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (Mar. 27, 2017).

9

deference and must be weighed using all of the factors provided in 20 CFR 404.1527."). Here, although the ALJ afforded Dr. Goodman's opinions "some weight," he failed to adequately address or otherwise demonstrate consideration of several of the enumerated factors.

For instance, the ALJ did not acknowledge that Dr. Goodman, who treated Claimant's pain, was a pain specialist. (*See, e.g.*, R. 451, 504–08, 668–69.) Nor did the ALJ acknowledge that Dr. Goodman had treated Claimant for almost four years and, that over that time period, Claimant had visited Dr. Goodman at least every other month (and sometimes every month). (R. 472–541, 571–94, 682–778, 795–803.) Indeed, by the time Dr. Goodman submitted his Pain Report in November 2015, he had seen Claimant nearly 40 times. (*See id.*)

The ALJ's failure to consider these factors was especially significant here because the ALJ gave more weight (*i.e.*, "great weight") to the opinion of the ME, Dr. Nimmagadda, even though all these factors—a doctor's treating relationship, specialty, duration of treatment, and frequency of examination—weigh in favor of giving Dr. Goodman's opinion greater weight. *See* 20 C.F.R. § 404.1527(c)(1), (2), (5). Indeed, there is no indication that Dr. Nimmagadda specialized in managing pain; to the contrary, his focus was allergy and immunology, pulmonary medicine, and internal medicine. (R. 59.) And whereas Dr. Goodman had seen Claimant dozens of times over almost four years, Dr. Nimmagadda had never examined or treated Claimant. (*See id.*)

Additionally, that the ALJ asserted (without explanation) that Dr. Nimmagadda's opinion was "consistent with the evidence" does not necessarily mean it should have been given more weight than Dr. Goodman's opinion. (*See* R. 30.) As noted above, the ALJ's analysis regarding the purported lack of supportability for Dr. Goodman's opinion or the consistency of his opinion was flawed and inadequate. A proper analysis of these factors may also affect the ALJ's consideration of Dr. Goodman's opinion. *See* 20 C.F.R. § 404.1527(c)(3)–(4).

10

In sum, the ALJ's failure to adequately justify the weight he says he gave to Dr. Goodman's opinion prevents the Court from assessing the reasonableness of the ALJ's decision. For these reasons, the ALJ did not offer substantial evidence for giving Dr. Goodman's opinion only "some weight," which is an error requiring remand. To be clear, the Court is not saying that, on remand, the Commissioner must give controlling weight to Dr. Goodman's November 2015 Pain Report. Rather, if the Commissioner determines that Dr. Goodman's opinion is not entitled to controlling weight, she must explain this determination with good reasons supported by substantial evidence. If Dr. Goodman's opinion is given less than controlling weight, the Commissioner must sufficiently explain the rationale underlying the amount of weight given to his opinion, in accordance with the factors set forth in 20 C.F.R. § 404.1527(c).

**B.     Other Issues**

Because the Court is remanding only on the errors identified above, it need not explore in detail the other arguments posited by Claimant on appeal since the analysis would not change the result in this case. The Commissioner, however, should not assume that the Court agrees with the ALJ's analysis of those issues. Similarly, Claimant should make no assumptions either. Rather, it is simply unnecessary for the Court to lengthen this Memorandum Opinion and Order by addressing Claimant's other arguments in a case that is being remanded anyway.

## IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 8] is granted, and the Commissioner's Motion for

Summary Judgment [ECF No. 15] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 21, 2018